UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>OAKLAND UNIFIED SCHOOL DISTRICT,<br><br>    Defendant. | Case No. 17-cv-04986-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, TO SUPPLEMENT ADMINISTRATIVE RECORD, AND TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 37, 38, 47 |

Plaintiff J.M. is a minor who, by and through her parent Marla McDonald, sued for attorney's fees under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3). Dkt. No. 1 ("Compl."). Pending before the Court are Defendant Oakland Unified School District's ("the District" or "OUSD") motions (1) for summary judgment, *see* Dkt. No. 37 ("Mot."); (2) to supplement the administrative record, *see* Dkt. No. 38; and (3) to file the administrative record under seal, *see* Dkt. No. 47.[1] The Court **GRANTS** all three motions.

**I.  BACKGROUND**

J.M.'s claim to attorney's fees, and the District's motion for summary judgment, require an explanation of the underlying administrative proceedings. The Court accordingly begins with a brief summary of the relevant facts, as found by the administrative law judge ("ALJ") below. Next, the Court summarizes the relevant aspects of the underlying proceedings on which J.M. bases her claim to fees.

**A.  J.M.'s Time in the Oakland Unified School District**

At the beginning of the 2016–17 school year, J.M. transferred to the Oakland Unified

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

School District to start second grade at Sequoia Elementary School. *See* Dkt. No. 1-1 ("Expedited Decision I") at 3. Prior to her transfer, she was diagnosed with attention-deficit hyperactivity disorder and had demonstrated "sensory-seeking behaviors that were negatively impacting her peer and adult relationships at school." *Id.* Once at Sequoia, she demonstrated "work avoidance"; if she "remained in class for an hour, it was a good day." *Id.* at 7. She also consistently "engaged in behaviors that presented a substantial risk of injury to herself and to others." *Id.* at 13.

J.M.'s "self-injurious behaviors fell into three categories: elopement, climbing, and mouthing." *Id.* The ALJ found that "[t]he physical layout of [Sequoia] create[d] a substantial risk of injury to [J.M.] given her climbing and elopement behaviors." *Id.* at 14; *see also id.* ("She climbed the outdoor railings adjacent to the steep drop-offs approximately 100 times."). J.M. would also, for example, climb 10-foot bookshelves that were at risk of toppling over, attempt to climb out of a window with a 15- to 20-foot drop, and place thumbtacks in her mouth. *Id.* at 14–15. As for her behavior toward others, J.M. "would push, hit, kick, climb on, and bite her aides," and "[o]n at least one occasion . . . used an overhand throw to throw a chair at [an aide], narrowly missing her." *Id.* at 15.

### B. Administrative History

#### i. Relevant Facts Underlying the Administrative Proceedings

Because of J.M.'s behavioral issues, on December 14, 2016, the District offered her a new "placement in an intensive counseling enriched special day class setting," to which her parent did not consent.[2] *Id.* at 18. Approximately two months later, on February 20, 2017, McDonald "requested a complete copy of [J.M.'s] education records." *See* Dkt. No. 1-2 ("Production Order") at 2. The District claimed that it provided all records "with the exception of those which do not meet the definition of pupil records under Federal or California law." *Id.* (internal quotation marks omitted). On March 7, 2017, McDonald further requested "all copies of audio recordings of [J.M.'s individualized education program ("IEP")] team meetings." *Id.* The District responded that it did not consider such recordings "to be part of [J.M.'s] educational record." *Id.* On March

---

[2] The decision does not specify whether McDonald is the parent to whom the ALJ refers.

21, 2017, J.M.'s attorney requested a "complete copy" of J.M.'s educational records, as well as "a list of the types and locations of all educational records" that were collected and maintained by the District as required by federal regulations. *See id.* The following day, the District provided J.M.'s attorney with "the same set of records it provided to [McDonald] the month prior." *See id.* On May 12, 2017, the District's counsel again sent the same documents to McDonald. *See id.* Still, as of May 15, 2017, J.M. asserted that the District had failed to produce several categories of records. *See id.* at 3.

### ii. The Parties' Requests for a Due Process Hearing

In response to J.M.'s parent declining to consent to the District's proposed placement, the District filed a request for due process hearing on March 16, 2017 with the California Office of Administrative Hearings ("COAH"), naming J.M.'s parent on J.M.'s behalf. *See* Expedited Decision I at 1. The District sought to "determine the appropriateness" of its proposed placement, as well as "defend its educational assessments after [McDonald] made a request for Independent Educational Evaluations." Compl. ¶ 7. J.M., in turn, named the District in a request for due process hearing on April 28, 2017, "alleg[ing] in part that the District failed to produce [J.M.'s educational records within 5[] days of [McDonald's] request." *Id.* ¶ 11; *see also* Expedited Decision I at 1. J.M. also appears to have alleged in her request, "as an affirmative defense, [the District's] failure to implement her IEP and operative positive behavior intervention plan." Expedited Decision I at 26.

J.M. bases her claim for attorney's fees on certain events related to these requests for due process hearings. For the purposes of this motion, those events can be sorted into three groups: (1) the California Department of Education's investigation and report; (2) J.M.'s motion to compel the production of school records by the District; and (3) the ALJ's rulings on the parties' requests for due process hearing.

### a. The California Department of Education's Investigation and Report

On April 7, 2017, after McDonald requested J.M.'s records from the District, J.M. filed a complaint with the California Department of Education ("CDE"), alleging that J.M.'s records were being withheld by the District. Compl. ¶ 12. On June 1, 2017, the CDE mailed its investigation

3

report, *see* Dkt. No. 1-2 at 21–26 (ECF pagination) ("CDE Report"), which determined that the District was out of compliance with California law giving parents the right to examine and receive copies of their children's school records, *see id.* at 4. The report required the District to "provide evidence" that it had (1) disclosed the findings of non-compliance to all District personnel who handle records requests, and (2) provided J.M.'s parent with all records maintained by the District. *Id.*

### b. J.M.'s Motion to Compel the Production of School Records

On May 11, 2017, J.M. filed with the COAH a motion to dismiss the District's request for due process hearing or, in the alternative, a motion to compel production of school records. *See* Production Order at 1. On May 24, 2017, the ALJ denied the motion to dismiss, given J.M.'s "fail[ure] to provide any legal support for her contention that a failure to produce requested educational records constitutes grounds to dismiss [the District's] due process complaint." *See id.* at 2.

The ALJ did, however, grant J.M.'s alternative motion to compel. Specifically, the ALJ found that the District was required to provide J.M. (and her parent) with the following records for the 2014–15, 2015–16, and 2016–17 school years:

> all audio recordings of [J.M.'s] IEP team meetings; IEP documents; written notes or reports from [the District's] excused IEP team members regarding their input to the IEP team; procedure safeguards sent to [J.M.'s parent] regarding [J.M.]; [J.M.'s] preschool records to the extent [the District] has these in its possession; school enrollment records; records of [J.M.'s] attendance and absences including notes as to excused tardies or absences; reports cards, academic and goal progress reports; health records; discipline and behavior records; testing protocols and rating scales; and service logs.

*See id.* at 14. Conversely, the District was not required to provide the "work samples" and emails J.M. had requested. *See id.* Accordingly, the ALJ granted J.M.'s motion to compel except as to her requests for work samples or emails. *See id.* at 15–16.

### c. The ALJ's Rulings on the Parties' Due Process Complaints

On May 26, 2017, the ALJ consolidated the parties' requests for due process hearing. Expedited Decision I at 1. On June 19, 2017, the District filed an amended request for due process hearing, which included an expedited issue. *Id.* The ALJ allowed the amended request and set the

4

expedited issue for hearing. *Id.*

### 1. The First Hearing and Ruling on the Expedited Issue

The first hearing on the expedited issue took place over several days in July and August of 2017. *Id.* On August 23, 2017, the ALJ issued her ruling, which set forth two issues for decision. As relevant here, Issue 2 was whether the District's "proposed intensive counseling enriched special day class, at either Sequoia or Prescott Elementary School," was "an appropriate interim alternative educational setting." *Id.* at 2. The ALJ determined that J.M. "prevailed as to Issue 2 as to the appropriateness of the Sequoia and Prescott proposed interim alternative educational setting." *Id.* at 34.

In arguing Issue 2, the District contended that "its intensive counseling enriched special day class program" was an appropriate interim alternative educational setting ("IAES") because it would provide a "high staff-to-student ratio, embedded therapeutic and behavioral supports, and a dedicated de-escalation room." *Id.* at 31. J.M. countered that she would be harmed if placed in the District's proposed program because the students in that program "exhibit disruptive behaviors which she will mimic . . . and the mental health and behavioral supports are not targeted to address her sensory needs and underlying developmental and mood disorders." *Id.*

As a preliminary matter, the ALJ determined that J.M.'s IAES must "allow[] her to participate in the general educational curriculum and to make progress on her goals" as set forth in her IEP. *Id.* at 32. The IAES was also to include:

> a therapeutic component; a high staff-to-student ratio; a campus-wide, integrated behavior modification system; a dedicated de-escalation space; a setting with physical features conducive to keeping [J.M.] safe in light of her behaviors; and a safety plan, specific to the physical layout of the setting; and transportation.

*Id.* Accordingly, the ALJ found that neither of the District's proposed placements was an appropriate IAES because (1) the placement at Sequoia was located on the Sequoia campus, which had proven to be unsafe for J.M.; (2) the District had presented no evidence regarding the physical layout of the campus where the Prescott program was located; and (3) neither the Sequoia nor the Prescott programs had a campus-wide integrated behavior program. *See id.* at 31–32. The ALJ also found that J.M.'s proposed placement—a non-public school—was not appropriate because

5

J.M. presented no evidence relating to (1) the campus's physical layout, or (2) how J.M.'s "immediate safety needs would be addressed in that setting during her transition to the campus, and pending the integrated behavior modification program taking place." *Id.* at 32.

The ALJ accordingly directed the District to "immediately identify" an appropriate interim placement that was consistent with her findings, and to disclose that placement to J.M. within three days. *Id.* at 32. The COAH maintained jurisdiction to ensure that the District did so, *see id.* at 32–33, and set the matter for hearing on September 7, 2017, *id.* at 34.

### 2. The Second Hearing and Ruling on the Expedited Issue

The parties reconvened on September 7, 2017 for the second hearing on the expedited issue, *i.e.*, the follow-up to the ALJ's decision on the first part of the expedited matter. Dkt. No. 10-4 ("Expedited Decision II") at 2. J.M.'s parent represented her, as counsel was not present. *See id.* at 23. The ALJ issued her ruling on September 21, 2017, with the sole issue in that proceeding being whether the District's newly-proposed IAES at Highland Academy, in the Hayward Unified School District, was appropriate. *Id.* at 2. The Court concluded that it was, "as it [met] all of the criteria established in the [Expedited Decision I]." *Id.* at 13. As such, the District "prevailed as to the sole issue decided." *Id.* at 19. The ALJ did conclude, however—over the District's objection—that the evidence established that J.M. would require a bus aide when being transported to the placement. *See id.* at 10, 15–18.

### 3. The ALJ's Decision on the Remaining Issues in the Consolidated Matter

On October 17, 2017, the District appeared before the ALJ for hearing on the remaining issues in the consolidated matter. *See* Dkt. No. 38-3 ("Dismissal Order") at 1. J.M. failed to appear (through her parent). *See id.* The ALJ denied J.M.'s motion to dismiss the District's case and for judgment in her favor, and granted the District's motion to dismiss J.M.'s case due to her parent's failure to appear. *See id.* at 2–3.

**C. This Action**

J.M. filed a complaint seeking attorney's fees in this Court on August 28, 2017. Dkt. No. 1. At a case management conference held on November 28, 2017, the Court granted J.M.'s

6

motion to appoint McDonald as her guardian ad litem. *See* Dkt. Nos. 24, 30.

The District filed its motion for summary judgment, *see* Dkt. No. 37 ("Mot."), on May 8, 2018, along with a motion to supplement the administrative record, *see* Dkt. No. 38. On June 12, the District filed the administrative record along with a motion to file it under seal. *See* Dkt. No. 47. J.M. filed her opposition to the motion for summary judgment on July 5, *see* Dkt. No. 48 ("Opp."), and the District replied on July 17, *see* Dkt. No. 49 ("Reply").

## II. LEGAL STANDARDS

### A. Motion to Supplement the Administrative Record

The IDEA provides that a district court "shall receive the records of the administrative proceedings" and "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). But "not all evidence is 'additional evidence.'" *E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1004 (9th Cir. 2011). For example, "a district court need not consider evidence that simply repeats or embellishes evidence taken at the administrative hearing." *Id.* In other words, additional "mean[s] supplemental." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993) (citing *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 790–91 (1st Cir. 1984). "[E]vidence that is non-cumulative, relevant, and otherwise admissible constitutes 'additional evidence' that the district court 'shall' consider pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii)." *E.M.*, 652 F.3d at 1004.

### B. Motion for Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997),

*overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

### C. Motion to File Under Seal

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*

*v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotation omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotation omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id. at 1179* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

Records attached to nondispositive motions, however, are not subject to the strong presumption of access. *See Kamakana*, 447 F.3d at 1179. Because such records "are often unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure. *Id.* at 1179–80 (quotation omitted). This requires only a "particularized showing" that "specific

9

United States District Court
Northern District of California

1 prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v.*
2 *Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c).
3 "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will
4 not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation
5 omitted).

**III. DISCUSSION**

**A. The Court Grants the District's Motion to Supplement the Administrative Record**

The District seeks to supplement the administrative record with three new exhibits. *See* Dkt. No. 38 at 5. Exhibit A and B are emails between the District and counsel for J.M., discussing potential settlement offers. *See* Dkt. Nos. 38-1, 38-2. Exhibit C is the OAH's decision dismissing J.M.'s case. *See* Dkt. No. 38-3. These documents are additional evidence because they are supplemental and not cumulative, and thus the Court **GRANTS** the District's motion.

**B. The Court Grants the District's Motion for Summary Judgment**

The District moves for summary judgment, arguing that it is entitled to judgment as a matter of law that J.M. is not entitled to any attorney's fees because she is not a prevailing party. *See* Mot. at 2. J.M. claims that she "obtained two enforceable orders" that make her a prevailing party: the May 2017 order requiring the production of her educational records and the August 23, 2017 order requiring OUSD to identify an appropriate interim placement. *See* Opp. at 10.

The Court will first discuss the applicable legal standard before discussing each of the factual arguments J.M. makes in favor of her prevailing party claim.

**i. Legal Standard for Prevailing Party**

Under IDEA, a court, "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Courts thus undertake a two-step inquiry to determine whether fees under IDEA are appropriate, considering whether (1) the parent seeking fees is a "prevailing party," and (2) the fees sought are reasonable. *See Irvine Unified Sch. Dist. v. K.G.*, 853 F.3d 1087, 1092 (9th Cir. 2017) (citing *Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1117 (9th Cir. 2006)). At this

10

stage, only the first step is at issue.

"Under the Supreme Court's generous formulation of the term, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)) (internal quotation marks omitted). In the context of IDEA, a plaintiff "must demonstrate that the hearing officer's order created 'a material alteration of the legal relationship of the parties.'" *V.S. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1233 (9th Cir. 2007) (quoting *Shapiro v. Paradise Valley Unified Sch. Dist.*, 374 F.3d 857, 864 (9th Cir. 2004)). This amounts to a showing that the administrative order gives a plaintiff "the ability to require the school district to do something it otherwise would not have to do." *Id.* (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000)) (internal quotation marks and brackets omitted). In any case, a prevailing party must show that its ability to force action by a district has the "necessary judicial *imprimatur*." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

Obtaining relief that is "purely technical" or "de minimis," however, is insufficient to confer prevailing party status. *See V.S.*, 484 F.3d at 1233 (citation omitted). "A plaintiff who achieves a transient victory at the threshold of an action can gain no award . . . if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded." *Sole v. Wyner*, 551 U.S. 74, 78 (2007). In other words, a plaintiff who secures an initial, "ephemeral" victory, "then loses on the merits as the case plays out and judgment is entered against her, has won a battle but lost the war." *See id.* at 86 (citing *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002)) (internal quotation marks and brackets omitted).

### ii. May 2017 Order Requiring Production of Educational Records

First, J.M. contends that she is a prevailing party because the ALJ's May 2017 order "gave student the ability to require the district to produce educational records that had been withheld," which were "actions it would not have had to do." Opp. at 10. The District argues that J.M.'s records request was a "purely technical" and "de minimis" success because it was merely a procedural win that did "nothing to change the legal relationship between the parties." Mot. at 9.

11

Obtaining the educational records to which she was entitled is the sort of de minimis success that is insufficient for J.M. to be denominated a prevailing party. The records were not a benefit J.M. sought in bringing suit but merely a tool to help her achieve victory. *See J.C. v. Mendham Twp. Bd. of Educ.*, 29 F. Supp. 2d 214, 220 (D.N.J. 1998) (denying summary judgment to plaintiffs because "plaintiffs have achieved a very small portion of their desired relief" and "must do more than simply procure defendant's compliance with the procedural mechanism of § 1415(j) before they are entitled to recover attorneys' fees"). Though J.M. received the records she sought, her substantive claim was ultimately dismissed for failure to prosecute. *See* Dismissal Order at 2–3. Requiring the District to produce J.M.'s educational records did not materially alter the relationship between the parties and thus does not make J.M. a prevailing party.

### iii. August 2017 Order Requiring Interim Placement

Second, J.M. argues that she is a prevailing party because the ALJ's August 23, 2017 "judicial order required the district to locate a placement that satisfied the criteria identified by" J.M.'s expert witness, Dr. Shawn Frugé. Opp. at 7. The District contends that J.M. overstates the effect of Dr. Frugé's testimony, *see* Reply at 2–6, and that "factual contribution" is not the same as prevailing on an issue in litigation, *see* Reply at 6–8. The Court agrees.

To be sure, the hearing officer designated J.M. as the prevailing party after the August 23 hearing "as to Issue 2 as to the appropriateness of the Sequoia and Prescott proposed interim alternative educational settings." Expedited Decision I at 34. But the hearing officer's designation is not dispositive, because this Court has an independent obligation to determine whether J.M. was the prevailing party. *See V.S.*, 484 F.3d at 1233 n. 2. And J.M.'s initial victories were displaced by the ALJ's later approval of the District's proposed placement at Highland Academy. *See* Expedited Decision II at 18.

In her motion for attorney's fees, J.M. essentially seeks to cast OUSD's choice of Highland Academy as mandated by the testimony of her expert. *See* Opp. at 7–8. After the August hearing, the ALJ rejected the District's proposed placements and ordered the District to "immediately identify" an appropriate interim placement that was consistent with her findings, and to disclose that placement to J.M. within three days. Expedited Decision I at 31–32. J.M. claims that her

12

expert, Dr. Frugé, "set forth the placement criteria." Opp. at 8. But this contention is simply not borne out by the record. The hearing officer considered and credited both Dr. Frugé and the District's expert witnesses, and the criteria were developed from the testimony of both parties' witnesses. *See, e.g.*, Expedited Decision I at 7, 19 ("Dr. Frugé and multiple Oakland witnesses established that Student had unaddressed mental health needs driving her behaviors"), 21 (District witness "corroborated" Dr. Frugé's testimony regarding "integrated campus-wide behavior modification system"), 23, 24, 32, 33. And even if Dr. Frugé helped to develop the criteria for the placement, J.M.'s parent ultimately "objected to the criteria themselves," *see* Expedited Decision II at 6, meaning that she did not prevail.

Moreover, the ALJ specifically rejected Dr. Frugé's recommendation of Edgewood as an IAES and denied J.M.'s requests for relief. *See* Expedited Decision I at 32, 35. At the subsequent hearing, the hearing officer concluded, over J.M.'s parent's objection, that the District's proposed Highland Academy placement was "an appropriate interim alternative educational setting." Expedited Decision II at 18. Thus, the District "prevailed as to the sole issue decided" at this follow-up hearing. *Id.* at 19. Based on the administrative record, J.M. cannot show that the testimony of her expert witness led to the necessary judicial *imprimatur* to force OUSD to do something it would not otherwise have done, and she thus was not a prevailing party.

To the extent that J.M. claims she is the prevailing party because the ALJ ordered the District to provide a bus aide on her ride to school, *see* Opp. at 11, that basis is foreclosed by the simple fact that J.M. was not represented by counsel at the hearing at which this argument was presented and decided. In the August 23 decision, the ALJ found that neither OUSD or J.M.'s proposed placements were appropriate. S*ee* Expedited Decision I at 31–32. J.M. filed her complaint for attorney's fees on August 28. *See* Dkt. No. 1. At the September 7 hearing, which formed the basis for the ALJ ordering OUSD to provide a bus aide, counsel was no longer representing J.M. *See* Expedited Decision II at 23 ("Parent represented Student"). The Court need not decide whether this portion of the order constituted a material alteration in the legal relationship of the parties, because it was J.M's parent, not counsel, that advocated for and achieved this success.

13

\* \* \*

Ultimately, any victory achieved by J.M. was technical, de minimis, or ephemeral. The hearing officer approved the District's proposal, *see* Expedited Decision II at 18, and dismissed J.M.'s case, *see* Dismissal Order at 2–3. As a matter of law, J.M. is not a prevailing party for purposes of an attorney's fees award under the IDEA.

Furthermore, even if the Court were to find that J.M. was a prevailing party as to the two issues she identifies, it would exercise its discretion not to award attorney's fees, based on the totality of the record as described above. In an IDEA action, "the court, *in its discretion*, may award reasonable attorneys' fees . . . ." 20 U.S.C. § 1415(i)(3)(B) (emphasis added). *See also Aguirre*, 461 F.3d at 1117 (explaining IDEA's fee-shifting provision). In particular, the Court notes that the ALJ dismissed J.M.'s affirmative claim, in its entirety, for failure to prosecute because J.M.'s parent did not attend the hearing. *See* Dismissal Order at 2–3. In addition, the ALJ ultimately adopted the District's proposed IAES at Highland Academy because it conformed to all of the previously-determined criteria. *See* Expedited Decision II at 13. Accordingly, based on its review of the entirety of the record, the Court finds in its discretion that granting attorney's fees here would be unwarranted in any event.

### C.   The Court Grants the Motion to File the Administrative Record Under Seal

The District filed the entire administrative record with the Court, along with a request for it to remain under seal. *See* Dkt. No. 47. The documents and records contained in the administrative record are more than tangentially related to the underlying cause of action, and the Court therefore applies the "compelling reasons" standard. The District has provided a compelling interest in sealing the entire administrative record because it consists of private and sensitive educational and medical records of Plaintiff J.M., a minor, that are largely protected from public disclosure by both federal and state law. *See A.B. v. San Francisco Unified Sch. Dist.*, No. C 07-4738 PJH, 2007 WL 2900527, at \*1 (N.D. Cal. Oct. 2, 2007) (granting motion to seal administrative record "which often contains sensitive educational and medical information, and often in references too numerous to redact"); *see also Cherry v. Clark Cty. Sch. Dist.*, No. 2:11-CV-1783 JCM GWF, 2013 WL 3944285, at \*12 (D. Nev. July 22, 2013).

## IV. CONCLUSION

The Court **GRANTS** all three of Defendant's motions. Because the motion for summary judgment resolves the sole cause of action in J.M.'s complaint, *see* Dkt. No. 1 at 3, and there are no outstanding issues remaining, the Court **DISMISSES** the action and directs the Clerk to close the case.

**IT IS SO ORDERED.**

Dated: 12/13/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge